IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 7, 2021

## RASHAWN JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. 18-02928, 18-02929, 18-02930     John Wheeler Campbell, Judge**

_____

## No. W2021-00392-CCA-R3-PC

_____

Petitioner, Rashawn Jones, appeals from the Shelby County Criminal Court's denial of his post-conviction petition seeking relief from his convictions upon his guilty pleas to three counts of robbery and one count of felony escape. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT H. MONTGOMERY, JR., JJ., joined.

Harry E. Sayle, III, Memphis, Tennessee (on appeal); John Zastrow, Memphis, Tennessee (at hearing), for the appellant, Rashawn Jones.

Herbert H. Slatery III, Attorney General and Reporter; Richard Davison Douglas, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Steve Ragland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Guilty Plea Hearing*

At Petitioner's July 10, 2019, guilty plea submission hearing, the State gave a factual basis for his guilty pleas. The State averred that on February 26, 2018, Janesha Cannon was robbed at gunpoint by two males outside of a Walmart on Austin Peay Highway. Ms. Cannon reported to Memphis Police Department officers that her purse was stolen. She described the men and their vehicle to police.

On March 1, 2018, Nancy Dowling was loading groceries into her vehicle in the parking lot of a Walmart on Germantown Parkway when she was robbed at gunpoint by two males. She reported that one of the men pointed a gun at her and demanded her purse. Officers viewed video of the incident and observed two men fleeing in a four-door sedan.

Shortly after Ms. Dowling was robbed, police responded to another robbery call at the Wolfchase Galleria on Germantown Parkway. The victim, Vera Pierce, reported that the suspect took her purse and fled in her vehicle, a 2016 Honda Accord. Officers in the area spotted Ms. Pierce's vehicle. They observed a male exit that vehicle and get into a vehicle matching the description of the vehicle at the scene of Ms. Dowling's robbery. Police initiated a traffic stop of the vehicle, in which Petitioner was a passenger. Petitioner matched the description of the robbery suspect.

Petitioner signed a waiver of rights form and admitted his role in the three robberies. Ms. Dowling and Ms. Pierce identified Petitioner in a photographic lineup as the gunman. Petitioner's codefendants also gave statements to police admitting their roles and identifying Petitioner as the gunman.

Following his arrest, Petitioner was an inmate at the Shelby County jail and was released to Memphis Mental Health Institute ("MMHI") for an evaluation. Petitioner escaped from that facility and was captured shortly thereafter.

In a colloquy with the trial court, Petitioner agreed that he had discussed his guilty pleas with trial counsel. He stated that trial counsel explained the waiver of rights to him, and Petitioner acknowledged his signature on the plea submission form. The trial court informed Petitioner of his rights, including his right to plead not guilty, to a jury trial, to confront witnesses, to testify or to remain silent, to call witnesses on his behalf, and to appeal his convictions. The trial court informed Petitioner of the State's burden of proof at trial. Petitioner stated that he understood his rights and that it was his decision to waive those rights by pleading guilty. The trial court informed Petitioner of the charges and respective sentences, which the trial court explained were "outside of [Petitioner's] range." Petitioner affirmed that trial counsel had discussed with him the proof against him, and he stated that he was satisfied with trial counsel's performance. Petitioner stated that he was entering his guilty pleas freely and voluntarily.

The trial court then accepted Petitioner's guilty pleas and sentenced him as a Range II offender to a total effective sentence of 18 years. Petitioner subsequently filed a timely petition for post-conviction relief.

***Post-Conviction Hearing***

Petitioner testified that he was 17 years old at the time of his arrest for the offenses in this case. He testified that he told police he wanted a parent or guardian present at the time of his interview. He asked if he could call his mother and police denied his request, telling him that he was "old enough to interview . . . by [him]self." Petitioner testified that he did not ask for an attorney during the interview. Petitioner admitted that he gave a signed confession "after the 12th hour" of his interview. He testified that he was "just so tired, no restroom break, no food, anything." He stated, "I was just ready to get up out of there." He testified that he did not discuss his interrogation with trial counsel and he did not believe that trial counsel filed a motion to suppress his statement. Petitioner testified that he did not discuss any possible legal defenses with trial counsel. He claimed that he asked trial counsel to obtain a video recording of his interrogation and that trial counsel told him "they don't need video because of your confessions you made." Petitioner testified that he believed a motion to suppress his statement would have been granted if trial counsel had filed one.

Petitioner testified that he had been "on medications since the age of nine, in and out of psychiatric hospitals" and that he was evaluated at MMHI. He testified that he asked trial counsel to obtain his juvenile record to confirm his mental health history and that trial counsel did not listen to him.

Petitioner acknowledged that he did not complain about trial counsel's performance at the guilty plea hearing. He testified that he was on "plenty [of] medications during the time, and plus [he] was just so tired." He said, "I had just came [sic] off suicide watch and I was just so frustrated." He claimed that he "wasn't, like, in my right state of mind" when he entered his guilty pleas. Petitioner also claimed that he had "a reading disability" that prevented him from reviewing the discovery material that trial counsel provided him. He testified that trial counsel helped him with "[s]ome of it."

Without presenting any proof regarding the probable success of a suppression motion, Petitioner rested.

Trial counsel testified that she had been practicing law for three years and that her practice consisted of "[m]ainly criminal defense." Trial counsel agreed that Petitioner was facing numerous indictments on serious charges. She testified that Petitioner could have received an effective life sentence if convicted on all of the charges. Trial counsel testified that she reviewed the "voluminous" discovery materials with Petitioner. She did not have any difficulty communicating with Petitioner, and Petitioner seemed satisfied with her representation. Trial counsel testified that the three victims, Ms. Dowling, Ms. Cannon, and Ms. Pierce, identified Petitioner in a photographic lineup as the person who robbed them.

Trial counsel considered filing a motion to suppress Petitioner's statement. She recalled reasoning that because "the validity of doing so was very minimal, only because there was – there are many other factors that would have still been able to possibly find him guilty, even with the statements being suppressed or not," she did not file such motion. Trial counsel agreed that Petitioner had an extensive juvenile criminal history. She believed that Petitioner understood the consequences of pleading guilty in this case. She recalled "a few" occasions when she visited Petitioner in jail and he could not meet with her because he was on suicide watch "or was having, like, a bad day." Trial counsel was aware of Petitioner's "mental health illnesses[,]" and she knew that Petitioner was on medication. She testified that she did not believe Petitioner "was suffering from any sort of problems with his mental illness [on the] day [of his guilty pleas] because he seemed like he was having a good day."

In a written order denying relief, the post-conviction court found that trial counsel received complete discovery from the State and shared all the information with Petitioner; that trial counsel was aware of Petitioner's mental health issues and sought a mental health evaluation, which did not support a mental health defense; and that trial counsel made a strategic decision not to seek suppression of Petitioner's statement to police. The post-conviction court specifically credited trial counsel's testimony and discredited Petitioner's testimony. The court found that Petitioner "presented no evidence to establish that he would have prevailed" on a motion to suppress his statement. The court concluded that Petitioner failed to establish that he received ineffective assistance of counsel.

## *Analysis*

On appeal, Petitioner contends that he is entitled to post-conviction relief because his trial counsel was ineffective for failing to file a motion to suppress his statement to police. He asserts that "a trial court could have found that Petitioner did not voluntarily, knowingly, and intelligently waive his right against self-incrimination[.]" Petitioner also asserts that trial counsel's belief that there was sufficient other evidence of Petitioner's guilt even if his statement was suppressed was not based on adequate preparation. The State responds that trial counsel's performance was not deficient and that Petitioner was not prejudiced by counsel's failure to file a motion to suppress.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their

testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. *See Fields*, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. *Id*.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner submits trial counsel was ineffective for failing to file and litigate a motion to suppress his statement to police. Specifically, Petitioner contends that at the time of his arrest, he "was a juvenile with a mental impairment" and did not voluntarily waive his right against self-incrimination. Additionally, Petitioner contends that trial counsel's decision not to seek suppression of Petitioner's statement was not based on

adequate preparation and investigation of the offenses because trial counsel did not interview witnesses or view video recordings of the robberies.

In evaluating an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. 689-90. Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id*. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

The post-conviction court found that trial counsel was "very credible" and Petitioner was "not credible." The court found that Petitioner failed to present any evidence that he would have prevailed on a motion to suppress. In order to prove prejudice on a claim that trial counsel was ineffective in failing to pursue a motion to suppress, the petitioner must show by clear and convincing evidence that "(1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested." *Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436 at *8 (Tenn. Crim. App. Sept. 12, 2011), *no perm. app. filed*. Accordingly, "[i]t is a petitioner's burden to submit evidence (and not just his testimony surmising on the merits of a pre-trial suppression motion) that the suppression motion would have been granted and that there is a reasonable probability that the trial proceedings would have concluded differently if trial counsel had pursued a motion to suppress evidence." *Charles Bradford Stewart v. State*, No. M2015-02449-CCA-R3-PC, 2017 WL 2645651, at *14 (Tenn. Crim. App. June 20, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017); *see Demarcus Sanders v. State*, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013), *perm. app. denied* (Tenn. Mar. 17, 2014).

Based on the proof presented at the post-conviction hearing, it is clear that trial counsel made a reasonable and well-informed decision not to file a motion to suppress while she was negotiating a plea offer for Petitioner, who was facing an effective life sentence for multiple charges, and we will not second-guess trial counsel's strategy. *See Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689); *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369). Trial counsel testified that she considered filing a motion to suppress but decided it would have "minimal" value for the defense given the weight of other evidence of Petitioner's guilt, including the identification of Petitioner as

the gunman by all three victims of the robberies to which Petitioner pleaded guilty. Trial counsel reviewed discovery with Petitioner. Trial counsel testified that she did not have any difficulty communicating with Petitioner about his case. Petitioner did not present any proof at the post-conviction hearing of what evidence further investigation by trial counsel would have yielded.

## CONCLUSION

The record does not preponderate against the post-conviction court's conclusions that Petitioner failed to establish either a deficiency in trial counsel's performance or prejudice from counsel's alleged deficiencies. Petitioner is not entitled to relief.

_____
TIMOTHY L. EASTER, JUDGE